his automobile under such control. He admitted on the trial that he was going 10 miles an hour, so fast that he could not stop between the girders and the track, and consequently he was, in our opinion, negligent.

[2] At the close of the whole case defendant moved for a dismissal, and also for the direction of a verdict. Section 1317 of the Code, as amended (Laws 1912, c. 380), after providing for a final judgment to be rendered by the Appellate Term, continues:

"When a trial has been before a jury, the judgment of the appellate court must be rendered either upon special findings of the jury or the general verdict or upon a motion to dismiss the complaint or to direct a verdict."

We therefore may render a final judgment upon a motion to dismiss the complaint or to direct a verdict; and as we have concluded that the chauffeur was negligent as matter of law, and that the complaint should have been dismissed at the trial, we should render final judgment upon this appeal, and dismiss the complaint; for section 1317 provides that, except where it may be necessary to order a new trial, the appellate court shall render final judgment upon the right of any or all of the parties according to law. If the justice below had dismissed the complaint, it would have been our duty to affirm upon this record; and it is none the less our duty after verdict to conform to the intent of the Legislature and render a final judgment disposing of this controversy.

Judgment and order reversed, with costs, and judgment ordered for defendant, with costs. All concur.

---

(78 Misc. Rep. 683.)

BROOKLYN, Q. C. & S. R. CO. v. BIRD et al.

(Supreme Court, Special Term, Kings County. December 23, 1912.)

1. MUNICIPAL CORPORATIONS (§ 325*)—STREET OPENING PROCEEDINGS—CONCLUSIVENESS.

Street opening proceedings under the Brooklyn Charter (Laws 1854, c. 384) were conclusive as to the vesting of title in the city, but not as to one claiming the award against one who received it as the apparent owner of the property taken.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 847–849; Dec. Dig. § 325.*]

2. MUNICIPAL CORPORATIONS (§ 517*)—SPECIAL ASSESSMENTS—CONCLUSIVENESS.

That land was assessed for a special improvement in the name of a particular person is not res judicata as to ownership in subsequent litigation.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 517.*]

3. NEW TRIAL (§ 108*)—NEWLY DISCOVERED EVIDENCE.

Motion for a new trial on the ground of newly discovered evidence which could not change the result is properly overruled.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. § 108.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. New Trial (§ 100*)—Newly Discovered Evidence.
   Where the title to lands in a suit was thoroughly investigated, an afterthought that former street opening proceedings might affect the question does not make such proceedings newly discovered evidence.
   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 183, 201–204, 208, 209; Dec. Dig. § 100.*]

Action by the Brooklyn, Queens County & Suburban Railroad Company against Maria A. Bird and another. On motion for new trial. Motion overruled.

See, also, 137 N. Y. Supp. 1112.

M. E. Finnigan, of Brooklyn, for plaintiff.

Watson & Kristeller, of New York City, for defendant Bird.

Archibald R. Watson, Corp. Counsel, of New York City, for City of New York.

CRANE, J. The newly discovered evidence upon which this motion for a new trial is made consists of the proceedings to open Marion street and Hopkins avenue, instituted in 1869 and 1872, respectively. In these proceedings it was determined that the ownership of that portion of the cut-off taken for street purposes was the property of the Brooklyn & Jamaica Turnpike Company. It is claimed that this determination in the street opening proceedings is res adjudicata as to owners of property in the cut-off not taken for street purposes.

[1] The street opening proceedings were taken pursuant to the charter of the city of Brooklyn (chapter 384 of the Laws of 1854 as amended), which required the commissioners in their report to give the names of the persons interested in the property taken and the amount to be assessed. The plaintiff asserts that under this charter the commissioners were to determine all questions of title, and that their report was final as to all parties having actual or constructive notice of the proceeding. I agree, in so far as the report of the commissioners upon title would be conclusive as against the city; but I doubt whether it would be conclusive as between different claimants. The purpose of condemnation proceedings is to procure land as speedily and readily as possible for public improvements, and the chief requisites are that the purpose shall be a public need and that the property be not taken without just compensation. Consequently, and according to the procedure in nearly all the states, the proceeds, in case of a disputed claim of title, are deposited with some custodian to await subsequent litigation. Thus by chapter 86, § 184, of the Revised Laws of 1813 (an act to reduce several laws relating particularly to the city of New York into one act), it was provided that, where an award was paid to a party in the proceeding not entitled thereto, another party rightfully claiming it could maintain an action against the person receiving the award to recover the amount so wrongfully paid. This has remained the law of the city of New York ever since, and is at present found in the Greater New York Charter (Laws 1901, c. 466, § 1441).

Under such a provision the report of the commissioners as to title

---

could not be considered res adjudicata as to the rightful claimant, but would be as to the city. No claim thereafter, of course, could be made against the city. It would be protected in paying the award in accordance with the report of the commissioners. De Peyster v. Mali, 92 N. Y. 262; In the Matter of the Corporation Counsel, 42 App. Div. 198, 58 N. Y. Supp. 1029; In the Matter of the Commissioner of Public Works, 135 App. Div. 561, 120 N. Y. Supp. 930; N. Y. C. & H. R. R. Co. v. Mathews, 144 App. Div. 732, 129 N. Y. Supp. 828.

No such provision as is found in the charter of the city of New York was contained in the charter of the city of Brooklyn, and the question arises whether or not a like action for money had and received could not even then be maintained by a rightful claimant against the person wrongfully receiving the award; in other words, if in condemnation proceedings under the charter of the city of Brooklyn the commissioners reported the title in A., and A. received the amount of the award, could B., the rightful owner, sue A. to recover the amount in an action for money had and received? It is conceded that B. would have no action against the city; but I believe that B. could maintain such an action against A. The purposes of the condemnation proceedings are not to establish title of disputing claimants, but to procure the property for the city for public purposes, paying the apparent owner the compensation awarded, without further liability, but without barring an action by the rightful owner against the person receiving the award. Tamm v. Kellogg, 49 Mo. 118; In the Matter of William Street, 19 Wend. 678–688; Embury v. Conner, 3 N. Y. 511, 53 Am. Dec. 325; O'Hare v. Chicago, M. & N. R. R., 139 Ill. 151, 28 N. E. 923; Spring Valley Waterworks v. San Francisco, 22 Cal. 434; Lewis on Eminent Domain (3d Ed.) §§ 635, 659, and 894, and cases cited.

My conclusion, therefore, is that the proceedings opening Marion street and Hopkins avenue were conclusive as to the city of Brooklyn, but were not res adjudicata as to the rightful owner in an action brought against the railroad receiving the award.

[2] But, assuming that under the charter of the city of Brooklyn the proceedings would be res adjudicata, and a bar in a subsequent action brought by the rightful claimant against the railroad receiving the award, this would only apply to the real estate taken, which would be the property lying within Marion street and Hopkins avenue. The property involved in this suit is between streets, and not in the street, and therefore would not be affected by the street opening proceedings; neither would the fact that the lands in this litigation and between streets were assessed in the name of the railroad company for the cost of the street opening proceedings be res adjudicata, as an assessment is made upon the land, and not against the owner, and title is of little consequence. In fact, section 15 of chapter 384 of the Laws of 1854, as amended by section 17, c. 63, of the Laws of 1862, required the commissioners of estimate to give the names of the owners or *occupants* of the lands assessed for improvements.

[3] If a new trial were granted in this case, the introduction of the

street opening proceedings above mentioned could not, for the reasons stated, change the result, and therefore the motion for a new trial upon the discovery of this alleged new evidence must be denied.

[4] Denial of the motion would also be justified upon the ground that, in a case where the title was so thoroughly investigated and briefed before submission to the court, the subsequent idea or thought that street opening proceedings might affect the question does not bring such proceedings within the class of newly discovered evidence, warranting a new trial.

Motion for a new trial denied, without costs.